IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. CHRISTOPHER R. MOLNAR, Defendant. | 8:17CR137 FINDINGS AND RECOMMENDATION |

This matter is before the Court on Defendant's Motion to Dismiss.[1] (Filing No. 43.) An evidentiary hearing was held in this matter on February 1, 2018. A transcript of the hearing was filed on February 9, 2018.[2] (Filing No. 53.)

Having considered all the evidence presented and arguments made, the undersigned concludes that the motion should be denied.

**FACTS**

On October 22, 2012, Canadian law enforcement executed a search warrant on an E-Commerce location in Toronto which they believed held servers that contained images of child exploitation. (TR. 9.) Canadian officials seized approximately 32 servers belonging to a website known to host images of child exploitation. (TR. 9.) The servers contained approximately 1.5 million gigabytes of data, which included account information, user information and the suspected images of child exploitation material. (TR. 10.) This translated to about 1.4 million

---

[1] The original indictment alleged activity occurring between August 27, 2012 and August 31, 2012. A superseding indictment was issued on December 12, 2017, which covers conduct allegedly occurring between August 27, 2012 and June 1, 2017. (Filing No. 34.) Defendant contends that his Motion to Dismiss only pertains to the time period of August 27, 2012 through August 31, 2012. (TR. 5.)

[2] The Court notes that Defendant withdrew his Motion to Suppress (Filing No. 42) at the evidentiary hearing. (TR. 2-3.)

files and 60,000 users. (TR. 10.) The files determined to be child exploitation material appeared to have been shared across approximately 2.5 million different websites. (TR. 10.)

In 2015, the New York office of the United States Immigration and Customs Enforcement's Homeland Security Investigations ("HSI New York") began receiving pieces of information from the Canadian authorities regarding the material found on the servers they had seized.[3] (TR. 12.) On July 1, 2015, HSI New York sent a summons to Google requesting records regarding the identity of customers associated with the website. This was the first investigative step taken by law enforcement within the United States regarding the data found on the Canadian servers. (TR. 13.) At the time the summons was served, there had been no communication with law enforcement in Nebraska and, as of that date, Defendant was not on law enforcement's radar relative to the investigation. (TR. 13.)

In June of 2016, HSI New York provided a lead packet, which is a report of investigation, to Homeland Security Investigations in Omaha, Nebraska ("HSI Nebraska"). (TR. 26-27.) The lead packet was on several Blu-ray DVDs. (TR. 15.) Once HSI Nebraska received the lead packet, and could access the DVDs, it conducted an investigation to determine the identity of the individual who accessed the website and images of child exploitation.[4] (TR. 15; Ex. 1.) A number of subpoenas were served and search warrants were executed to determine this information. (Ex. 1.) One of the summons was to Google, which only yielded documents dated after March, 2016. (TR. 31; Ex. 102.) On June 5, 2017, HSI Nebraska served a summons upon Cox Communications, requesting subscriber information and Internet Protocol addresses ("IP addresses") relative to Defendant. (TR. 19-20; Ex. 1.) Cox was only able to provide IP address information dating back to 2015.[5] (TR. 20.)

---

[3] The entire amount of data and child exploitation material involved in the investigation was not received by authorities in New York until December, 2015. (TR. 12-13.)

[4] Because Defendant is employed at Offutt Air Force Base, HSI Nebraska also provided the lead information to the United States Air Force of Special Investigation in October, 2016. (TR. 34.)

[5] Agent McCarthy testified that when he subpoenaed the Cox Communication records, he knew, based on his investigative experience, that they only keep records for a limited period of

Defendant was indicted on April 19, 2017, and charged with three counts of receiving and possession of child pornography. (Filing No. 1.) The alleged criminal conduct that formed the basis of the original indictment took place between August 27, 2012 and August 31, 2012.

**DISCUSSION**

Defendant claims that the indictment should be dismissed based on pre-indictment delay. A defendant claiming a due process violation for pre-indictment delay must establish: (1) the delay resulted in actual and substantial prejudice to the presentation of his defense; and (2) the government intentionally delayed the indictment either to gain a tactical advantage or to harass him. *United States v. Jackson*, 446 F.3d 847 (8th Cir. 2006); *United States v. Grap*, 368 F.3d 824, 829 (8th Cir. 2004); *United States v. Sprouts*, 282 F.3d 1037, 1041 (8th Cir. 2002). A court will only inquire into the reasons for delay where actual prejudice has been established. *United States v. Gladney*, 474 F.3d 1027, 1030-31 (8th Cir. 2007). "To establish actual prejudice, a defendant must identify witnesses or documents lost during the delay period." *Id.* at 1031. "[A]ctual prejudice cannot be established by defendant's speculative or conclusory claims of possible prejudice as a result of the passage of time." *Id.* The defendant bears the burden of showing that the lost testimony or information is not available through other means. *Id.*

Defendant contends that he was substantially prejudiced because, due to the government's delay, he was unable to obtain records from Cox Communications. Defendant maintains that these records could have shown what Defendant's particular IP address was for his home in 2012. This IP address could have been compared to the IP address that was used to access the website to see if they were the same.[6] It is true that the records from Cox Communications regarding Defendant's IP address being utilized in his home in 2012 no longer exist because Cox Communications, seemingly consistent with its normal company policy,

---

time, approximately a year or so. Based on this, he did not think they would have records from 2012. (TR. 20, 30, 37; Ex. 101.)

[6] The Court will note that when Defendant's devices were confiscated, there was evidence on his computers that he was masking his IP address. (TR. 41.)

purged its records. Still, Defendant must show that the documents were lost due to a delay properly attributable to the government. He cannot make this showing.

A tremendous amount of information was recovered from the servers. Consequently, it took a large amount of time for investigators to review the materials. Also, the investigation involved foreign investigative bodies, as well as several agencies within the United States. Authorities in the United States did not even begin receiving information from Canada until 2015. Additionally, it appears from the evidence that Cox Communications only maintains records of IP addresses for approximately two years, and Google only retains this information for six months. (Ex. 101, 43-44.) Therefore, even if subpoenas were issued to Cox Communications and Google at the time that HSI New York first received the information from Canada in 2015, Cox Communications and Google would not have had Defendant's information from 2012. It is apparent that the length of the investigation was not caused by the government. Rather, it was attributable to the volume of information collected through the search of the servers and the number and type of investigative bodies involved.

Defendant also ostensibly argues that he was prejudiced because his employment records, which purportedly could have shown that he was at work and unable to download and/or possess the images of child pornography at the times alleged, are now unavailable due to the delay. It is true that Defendant's computer login records from his employer from this time period are no longer available, as the employer's records only date back to December 16, 2013. (TR. 47-49; Ex. 104). However, although the logs would have shown the dates and times Defendant was at work, there was no testimony from Defendant that other evidence, such as attendance records or logs, is not available to show the dates he was at work. Moreover, Defendant, his wife, family members, or co-workers could testify as to dates Defendant was at work. In other words, there appears to be other ways for Defendant to demonstrate whether he was at work at a certain time. Simply put, Defendant has not met his burden of showing that the lost testimony or information is not available through other means.

Even if the Court could find that Defendant has been prejudiced by the delay, he would still have to show that the government intentionally delayed his indictment either to gain a

4

tactical advantage or to harass him. Defendant cannot make such a showing. The evidence shows that Canadian authorities recovered an enormous amount of information through the search of the servers. Due to the volume of information, Canadian investigators did not begin forwarding materials to HSI New York until July, 2015, and the entirety of the information was not received by U.S. investigators until December, 2015. On July 5, 2015, HSI New York served a summons upon Google to obtain records regarding the identity of customers associated with the website. HSI Nebraska did not become involved until June, 2016, when it received a lead packet from HSI New York. Thereafter, HSI Nebraska began conducting its own investigation. Less than a year after receiving the lead packet from HIS New York, Defendant was indicted. The time between the beginning of the investigation and Defendant's indictment is understandable under the circumstances. The investigation into the website required the review of a tremendous amount of information. Not only that, but the investigation was conducted by multiple entities, including a foreign country and several investigative agencies within the United States. The undersigned cannot conclude that the government intentionally delayed in indicting Defendant to gain a tactical advantage or to harass him.

Accordingly,

**IT IS HEREBY RECOMMENDED** to United States District Court Judge Robert Rossiter, Jr. that Defendant's Motion to Dismiss (Filing No. 43) be denied.

Dated this 9th day of March, 2018.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.