IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 8:17CR137 |
| v. | |
| CHRISTOPHER R. MOLNAR, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on the Findings and Recommendation (Filing No. 54) of the magistrate judge[1] recommending the Court deny defendant Christopher R. Molnar's ("Molnar") Motion to Dismiss Pursuant to [Federal Rule of Criminal Procedure] 48(b) and the Due Process Clause of the 5th Amendment (Filing No. 43). Molnar has objected (Filing No. 55) to the Findings and Recommendation. For the reasons stated below, the Findings and Recommendation is accepted, and the Motion to Dismiss is denied.

I.  BACKGROUND

   A.   The Investigation

On October 22, 2012, Canadian law enforcement officers executed a search warrant on an e-commerce location in Toronto, looking for servers containing images of child pornography. The officers seized about thirty-two servers associated with a website known to host images of child pornography. The total data on the servers contained approximately 1.5 petabytes of data including account information, user information on 60,000 users, and 1.4 million files constituting actual or suspected images of child pornography.

---

[1]The Honorable Susan M. Bazis, United States Magistrate Judge for the District of Nebraska.

After coordinating with Canadian authorities for several years, the Homeland Security Investigations ("HSI") office in New York ("HSI New York") began receiving the data and information from the search and seizure in 2015. On July 1, 2015, HSI New York took its first investigative step into the data by serving a summons on Google. HSI New York received the last of the data from Canada in December of 2015. On June 1, 2016, HSI New York sent information about the conduct at issue in this case to the HSI office in Nebraska ("HSI Nebraska").

On July 15, 2016, HSI Nebraska sent a preservation letter to Google for christopher.molnar@gmail.com. On August 22, 2016, HSI Nebraska served grand-jury subpoenas on Google for that email address and on Microsoft for chris_molnar@hotmail.com. HSI Nebraska then executed search warrants for those email addresses on August 30, 2016. HSI Nebraska received the requested grand-jury production from both Google and Microsoft on September 3, 2016. On September 29, 2016, HSI Nebraska served a grand-jury subpoena on T-Mobile. HSI Nebraska received information pursuant to the Google search warrant on October 18, 2016, the T-Mobile grand-jury subpoena on December 13, 2016, and the Microsoft search warrant on January 6, 2017. On March 1, 2017, HSI Nebraska submitted video file hashes to the National Center for Missing and Exploited Children.

On April 19, 2017, a grand jury returned an indictment against Molnar covering conduct from August 27 to August 31, 2012, and an arrest warrant for Molnar was issued on April 20, 2017. On June 1, 2017, Molnar was interviewed and arrested, and officers performed a consent search of his residence. On June 2, 2017, officers searched Molnar's residence and seized an HP Pavilion desktop computer. On June 5, 2017, HSI Nebraska issued summons to Cox Communications ("Cox") and AT&T for subscriber data. HSI Nebraska received the AT&T data on July 1, 2017, and the Cox data on July 6, 2017.

On September 11, 2017, Molnar filed a Motion to Dismiss Criminal Case (Filing No. 23) for pre-indictment delay. After learning of an impending superseding indictment, Molnar moved (Filing No. 30) to withdraw his motion on September 25, 2017, and the motion was dismissed (Filing No. 31) on September 26, 2017. On September 27, 2017, the government seized a Samsung Galaxy cell phone and Samsung tablet related to the case. A grand jury returned a superseding indictment against Molnar on December 12, 2017, covering conduct from August 27, 2012, to June 1, 2017.

### B. Motion to Dismiss

On January 8, 2018, Molnar moved to dismiss (Filing No. 43) any portion of the indictment and superseding indictment covering conduct pertaining to the time-period of August 27 through August 31, 2012 (the "time-period"), based on alleged pre-indictment delay in violation of the due process clause. *See* U.S. Const. amend. V.

Molnar argues he has been prejudiced by the delay in two ways. First, Molnar claims he is unable to obtain records from Cox and Google relating to his internet protocol ("IP") address during the time-period because Cox and Google regularly purge their records, a fact of which the government was aware. Second, he is now unable to access time logs from the time-period from his work at Offutt Air Force Base ("Offutt"). Molnar claims the time logs would show he was at work during the times the child pornography was allegedly downloaded to his home computer.

After a hearing, the magistrate judge determined Molnar was not prejudiced by the deletion of the Cox and Google records because any delay was not properly attributable to the government. The magistrate judge reasoned Molnar was not prejudiced by the loss of the time logs because other evidence is available to show the times he was at work, such as testimony by Molnar, his wife and other family members, and his co-workers. The magistrate judge concluded that, even if Molnar was actually prejudiced, there was no evidence the government intentionally delayed his indictment to gain a tactical advantage or to harass him. Molnar has objected (Filing No. 55) to the magistrate

judge's determinations that (1) he was not actually prejudiced by the delay and (2) the government did not intentionally delay his indictment.

## II. DISCUSSION

"The Due Process Clause of the Fifth Amendment protects a criminal defendant against unreasonable pre-indictment delay." *United States v. Sturdy*, 207 F.3d 448, 451-52 (8th Cir. 2000). "In order to show that his due process rights were violated, [Molnar] must establish that (1) the delay resulted in actual and substantial prejudice to the presentation of his defense and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him." *United States v. Skinner*, 433 F.3d 613, 617 (8th Cir. 2006).

### A. Actual and Substantial Prejudice

"The defendant bears the burden of proving actual prejudice flowing from the pre-indictment delay." *United States v. Bartlett*, 794 F.2d 1285, 1289 (8th Cir. 1986). "To prove actual prejudice, a defendant must specifically identify witnesses or documents lost during delay properly attributable to the government." *United States v. Brockman*, 183 F.3d 891, 895 (8th Cir. 1999) (quoting *Bartlett*, 794 F.2d at 1289). "Finally, it is the defendant's burden to show that the lost testimony or information is not available through other means." *Sturdy*, 207 F.3d at 452.

#### 1. Cox and Google Records

The first source of prejudice that Molnar identifies is the loss of Cox and Google records relating to his IP address during the time-period. Special Agent Justin McCarthy ("Agent McCarthy") has testified Cox typically retains that data for two years, and Google typically retains it for about six months.

The magistrate judge found that the records were not lost due to delay properly attributable to the government because the Canadian authorities did not deliver information about Molnar to HSI New York until July of 2015 at the earliest, which is

4

more than two years after August of 2012. Molnar counters that the "delay was caused by the government, no matter what country the law enforcement agency came from."

The actions of the Canadian government cannot be the source of delay properly attributable to the prosecuting United States government. "The federal government, generally, cannot be held liable for prejudice which flows solely from the actions of a separate sovereign." *Bartlett*, 794 F.2d at 1290 n.3. On the other hand, there is some evidence that the United States government was involved in the investigation before July 2015, as evidenced by Agent McCarthy's testimony that "it was an arduous two to three years of working with Canada, and Canada's law enforcement" before HSI New York received the data.[2] It is therefore unclear how much of the delay is attributable to the United States government and how much is attributable to the Canadian government.

Because it is Molnar's burden to prove actual prejudice, he must prove the delay before August of 2014[3] was due to the actions of the United States government. He fails to do so because he has presented no evidence that the delay was due to failings by the United States government. Molnar is not substantially prejudiced by the loss of the IP data from Cox and Google.

### 2. Employment Records

The second alleged source of actual prejudice is the loss of Molnar's time logs from Offutt. Molnar submitted an e-mail exchange showing that, at the time of his request on November 14, 2017, Offutt's time logs went back to December 13, 2013.

If Offutt routinely purges time logs after four years, then the records from August of 2012 would have been lost around August of 2016. In that case, the government would be the source of the prejudice because HSI New York fully received the

---

[2]There is no need to separately assign blame for any delay to either HSI New York or HSI Nebraska because they are both agencies of the federal government.

[3]Two years after the time-period and the date at which Cox would have purged the relevant records.

information from the Canadian government in December of 2015.[4]  However, if Offutt's time logs only go back to December 13, 2013 for some other reason, such as a change in systems at that time, then the prejudice is not properly attributable to the government.

Molnar bears the burden of proving the loss is due to the government, and additional information on the nature of Offutt's record keeping is essential to resolving this issue.  However, because the inquiry into the government's alleged intentional delay is less murky, the Court will presume the loss of the time logs prejudiced Molnar for the sake of analysis.[5]

B. **Intentional Delay**

Even if Molnar is able to satisfactorily establish actual prejudice from the loss of either the IP data or the time logs, he must still prove (1) the government intentionally delayed and (2) the government did so to gain a tactical advantage or harass him. *Skinner*, 433 F.3d at 617; *accord Marion*, 404 U.S. at 324-25 (finding a defendant must show substantial prejudice along with an intentional delay to gain a tactical advantage because "no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution").  Molnar has not shown such an illicit motive.

All the evidence in the case leads to the conclusion that the delay was caused by the massive amount of information gathered by the Canadian government, the bureaucratic red tape involved in transferring the information to another government, and the necessary subsequent investigatory follow-up.[6]  It is implausible the government

---

[4] Although the delay may be understandable due to the volume of the data collected, "[a]ctual prejudice to the defense of a criminal case may result from the shortest and most necessary delay." *United States v. Marion*, 404 U.S. 307, 324 (1971).

[5] The magistrate judge found any lost evidence would be available through other means, such as testimony.  However, the probative value of objective time logs maintained by the United States Air Force is different and arguably greater than that of the testimony of Molnar's family.  It is hard to say one could completely substitute for the other.

[6] Molnar's constitutional rights would not be protected by requiring the government to rush to judgment as soon as it discovers suspicious information.

would have been able to negotiate the transfer of the evidence and adequately finish its investigation before the two-year purge of information at Cox, but it decided to delay so that the (potentially incriminating) evidence would be lost. The government almost definitely would have been unable to secure the evidence and finish a suitable investigation before the six-month purge at Google. It is also unlikely the government is so familiar with the time-log retention policies of Offutt that it knew how long to wait before indicting Molnar. Because Molnar fails the second prong of the test for pre-indictment delay, he cannot show a due process violation.

**III. CONCLUSION**

Molnar has not shown he was substantially prejudiced by the loss of IP data from Cox and Google. While it is possible Molnar was prejudiced by the loss of the time logs, the record does not establish the government delayed the investigation in an attempt to gain a tactical advantage over Molnar or to harass him. Accordingly,

IT IS ORDERED:
1. Molnar's Statement of Objections to Magistrate Judge's Findings and Recommendation (Filing No. 55) is overruled.
2. The magistrate judge's Findings and Recommendation (Filing No. 54) is accepted.
3. Molnar's Motion to Dismiss Pursuant to Rule 48(b) and the Due Process Clause of the 5th Amendment (Filing No. 43) is denied.

Dated this 20th day of April, 2018.

BY THE COURT:

*Robert F. Rossiter, Jr.* (signature)

Robert F. Rossiter, Jr.
United States District Judge